UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KARY GENE KLING,<br><br>Plaintiff,<br><br>vs.<br><br>ED LOUIE, LIEUTENANT AT MIKE DURFEE STATE PRISON, OFFICIAL CAPACITY; ROBERT DOOLEY, CHIEF WARDEN AT MIKE DURFEE STATE PRISON, OFFICIAL CAPACITY; JEREMY BAKER, CORPORAL AT MIKE DURFEE STATE PRISON, OFFICIAL CAPACITY; JOSH KLIMEK, UNIT MANAGER AT MIKE DURFEE STATE PRISON, OFFICIAL CAPACITY; TIFFANY VOIGT, UNIT COORDINATOR AT MIKE DURFEE STATE PRISON, OFFICIAL CAPACITY; TAMMY DEJONG, CASE MANAGER AT MIKE DURFEE STATE PRISON, OFFICIAL CAPACITY; TAMMY DOYLE, UNIT MANAGER AT MIKE DURFEE STATE PRISON, OFFICIAL CAPACITY; KIM LIPPENCOTT, CASE MANAGER AT MIKE DURFEE STATE PRISON, OFFICIAL CAPACITY; BRIAN FOLEY, COORDINATOR AT MIKE DURFEE STATE PRISON, OFFICIAL CAPACITY; DENNIS DAUGAARD, GOVENOR AT STATE OF SOUTH DAKOTA, OFFICIAL CAPACITY; DENNIS KAEMINGK, SECRETARY OF CORRECTIONS AT STATE OF SOUTH DAKOTA, OFFICIAL CAPACITY; AND MARTY JACKLEY, ATTORNEY GENERAL AT STATE OF SOUTH DAKOTA, OFFICIAL CAPACITY;<br><br>Defendants. | 4:18-CV-04027-RAL<br><br>OPINION AND ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING CASE |

Plaintiff Kary Gene Kling is an inmate at the Mike Durfee State Prison in Springfield, South Dakota. On March 7, 2018, Kling filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 and requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Doc. 1; Doc. 2. This Court now has screened his complaint pursuant to 28 U.S.C. § 1915A. For the following reasons, Kling's motion for leave to proceed in forma pauperis is granted, but his complaint is dismissed.

## I. FACTS ALLEGED IN THE COMPLAINT[1]

On November 11, 2017, between 12:00 p.m. and 5:00 p.m., Kling, who apparently was on parole or a work release program at the time, waited in a holding cell at the Yankton Community Work Center to take a drug test. Doc. 1 at 9. While waiting, Kling witnessed the drug test of another inmate administered by Defendant Ed Louie. While conducting that test, Louie allegedly did not wear gloves, collect an adequate urine sample, or test the sample before directing the inmate to dump the sample. *Id.* at 9-10. Kling believed the other inmate's results could have been recorded as clean or dirty. *Id.* at 10. After witnessing this incident, Kling became scared to do a urine test for Louie and refused to submit to his drug test. *Id.* Kling then received a write-up, was moved to the special housing unit (SHU) at Mike Durfee State Prison (MDSP), and lost his parole. *Id.*

While housed in the SHU, Kling confronted Louie. *Id.* at 10. Kling observed that Louie was nervous, lying, and stuttering. *Id.* Louie then visited Kling the next day and tried to explain that what happened was not criminal. *Id.* at 11. Louie inquired why Kling was at MDSP and offered to help Kling get his parole back. *Id.* at 12. Nothing came of the offer. *Id.*

---

[1] This Court makes no findings of fact at this point in the case. The matters set forth in this section are taken from the factual allegations pleaded in Kling's Complaint, which this Court must take as true on initial screening. *Beck v. Fleur*, 257 F.3d 764, 765 (8th Cir. 2001) (citation omitted).

Once released from the SHU, Kling attempted to have the situation investigated. He wrote more than forty kites to Defendants Josh Klimek, Tiffany Voigt, Tammy Dejong, Tammy Doyle, Kim Lippencott, Brian Foley, Ed Louie, Robert Dooley, Deputy Warden, and the Associate Warden. *Id.* at 10-11. The recipients did not respond to the kites or otherwise speak with Kling. *Id.* at 11. An unknown person, however, asked Kling what he saw. *Id.* at 10. Kling wrote letters to the Secretary of Corrections, the Governor, the Attorney General, Prison Central Records, the Warden, and the Division of Criminal Investigations (DCI). *Id.* at 12. The recipients did not respond. *Id.*

Kling asked Officer Jeremy Baker to speak to the Officer in Charge at MDSP. *Id.* at 12. Baker asked why Kling needed to speak to the Officer in Charge and Kling told Baker it was about Louie. *Id.* Baker then threatened Kling and called him at rat. *Id.* Finally, a DCI agent interviewed Kling and answered Kling's questions about the criminality of altering results of a drug test. *Id.* at 13. Kling claims that he remains fearful of urine testing, and the experience has caused him to huff, starve himself at times and other physical and mental issues. *Id.* at 14-15.

## II. LEGAL STANDARD

At this stage of the case, this Court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013).

Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). Under 28 U.S.C. § 1915A, this Court must screen prisoner claims filed in forma pauperis and determine whether they are (1) "frivolous, malicious, or fail[ ] to state a claim on which relief may be granted; or (2) seek[ ] monetary relief from a defendant who is immune from such relief." *See also Onstad v. Wilkinson*, 534 F. App'x 581, 582 (8th Cir. 2013).

### III. DISCUSSION

#### A. Motion to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, " '[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan.' " *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A)   the average monthly deposits to the prisoner's account; or
(B)   the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

4

Plaintiff has reported average monthly deposits to his prisoner trust account of $5.67 and an average monthly balance of *negative* $51.55. Doc. 3. Based on this information, the court finds plaintiff is indigent and grants him leave to proceed in forma pauperis.

Plaintiff must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, after payment in full of the initial partial filing fee, the remaining installments will be collected pursuant to this procedure.

The clerk of the court will send a copy of this order to the appropriate financial official at plaintiff's institution. Plaintiff will remain responsible for the entire filing fee, as long as he is a prisoner, even if the case is dismissed at some later time. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

**B. Screening Under § 1915A**

Kling raised a single count against defendants in his complaint and labeled the claim "threat to safety." Doc. 1 at 8. The United States Supreme Court has interpreted the Constitution to require prisons to provide "reasonable safety" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). To prevail on a failure to protect claim, a prisoner must demonstrate two things. First, he must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Spruce v. Sargent*, 149 F.3d 783, 785 (8th Cir.1998). Second, an inmate must demonstrate that prison

5

officials were deliberately indifferent to that risk. *Id.* "Deliberate indifference requires a showing that the official knew the risk existed, but disregarded it." *Farmer*, 511 U.S. at 837.

Kling fails to demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Kling alleges he received verbal threats from Baker and talked with Louie. Doc. 1 at 3. Verbal threats made by a state-actor generally are not sufficient to state a § 1983 claim. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). " 'Mere threatening language and gestures' of a state actor 'do not, even if true, amount to constitutional violations.' " *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) (quoting *McFadden v. Lucus*, 713 F.2d 143, 146 (5th Cir. 1983)). The United States Court of Appeals for the Eighth Circuit has recognized a narrow exception for conduct that amounts to "wanton act[s] of cruelty" that can be categorized as "brutal." *Burton v. Livingston*, 791 F.2d 97 (8th Cir. 1986). In *Burton*, the Eighth Circuit held that a guard who pointed a pistol at a prisoner and stated "nigger run so I can blow your Goddamn brains out, I want you to run so I'll be justified" could be held accountable under § 1983. *Id.* at 99. But Kling's allegations do not even come close to that level. He has not alleged that Louie or Baker had a weapon or even specified the nature of the threat. Kling alleges that Baker said "You know you can't win against us," "you know what happens to rats," "don't make yourself a target," and "ain't nobody going to do shit for you." Doc. 1 at 12. The statements attributed to Louie in the complaint are not even threatening. All Kling has alleged is that Baker threatened him and certain defendants discouraged him from reporting what Louie had done. *Id.* at 2. Meanwhile, Kling was filing internal "kites" reporting the incident and related matters over 40 times. *Id.* at 12. These are insufficient allegations to maintain a § 1983 claim against any of the defendants.

Kling complains that the defendants failed to respond to his grievances and letters or otherwise properly investigate the incident. In *Buckley v. Barlow*, 997 F.2d 494 (8th Cir. 1993),

6

Buckley, a prisoner, alleged that defendants violated his constitutional rights because they "refused to pick up his completed grievance forms," and supervisors "condoned" this "by refusing to answer Buckley's letters or investigate his grievances." at 495. The Eighth Circuit concluded that Buckley failed to state a claim "because no constitutional right was violated by the defendants' failure, if any, to process all of the grievances he submitted for consideration." *Id.* (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure)). "[D]efendants' failure to process any of Buckley's grievances, without more," was "not actionable under section 1983." *Id.* Similarly, in *Moore v. Thurber*, 105 F.3d 663 (8th Cir. 1997), the Eighth Circuit dismissed allegations that defendant jail officials continuously denied a prisoner's requests for grievance forms, that the jail director knew about this interference and did nothing, and that the investigating officer covered up the issue by "failing to investigate thoroughly." at *1. The court affirmed the district court's dismissal of these claims as frivolous. *Id.* (citing *Buckley*, 997 F.2d at 495). Relatedly, the Eighth Circuit has held that prisoners fail to state a claim by alleging prison officials failed to process their grievances, *see e.g. Hodgson v. Fabian*, 378 F. App'x 592, 594 (8th Cir. 2010); *Day v. Corr. Med. Servs.*, 281 F. App'x 624 (8th Cir. 2008), and that the failure to investigate grievances does not rise to a constitutional violation. *King v. Houston*, 556 F. App'x 561, 563 (8th Cir. 2014). Other district courts within the Eighth Circuit have dismissed similar claims. *E.g. Townsend v. Singleton*, No. 4:12-CV-04072, 2013 WL 501441, at *3 (W.D. Ark. Jan. 3, 2013), report and recommendation adopted, No. 12-CV-4072, 2013 WL 501112 (W.D. Ark. Feb. 11, 2013); *Webb v. Smartwood*, No. 07-4017-CV-C-NKL, 2009 WL 2606237, at *5 (W.D. Mo. Aug. 21, 2009). Even if the defendants failed to investigate Kling's "kites," they would

not be liable under § 1983, because failure to investigate the grievance alone is not a sufficient basis for liability. *King*, 556 F. App'x at 563.

Finally, to the extent that Kling claims his safety is threatened by Louie's alleged tampering with another inmate's urine sample, Kling fails to state a claim upon which relief may be granted. Though what Louie allegedly did with the other inmate's urine sample clearly was wrong, Kling does not have standing to bring such a claim. One essential aspect of the "Cases" or "Controversies" requirement of Article III of the Constitution "is that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013). "This requires the litigant to prove that he has suffered a concrete and particularized injury...." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "In other words, for a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm." *Id.* Kling cannot prove he suffered "personal" harm when Louie discarded another inmate's urine sample, because it was not Kling's drug test that was tampered with. Indeed, Kling refused to participate in any urine test at that time. Doc. 1 at 10. Kling lacks standing to maintain a lawsuit alleging that Louie violated another inmate's rights or violated procedures of the prison when handling a urine sample of another inmate. *See Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008) ("As a general rule, a plaintiff may only assert his own injury in fact and cannot rest his claim to relief on the legal rights or interests of third parties.") (internal quotation marks omitted). Accordingly, Kling's single count of threat to safety is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim on which relief may be granted.

### C. Strike Under 28 U.S.C. § 1915(g)

Section 1915(g) states:

8

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The court finds that Kling fails to state a claim upon which relief may be granted, and his claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Therefore, Kling is assessed a strike under § 1915(g) for filing this complaint. Accordingly, it is

ORDERED that Kling's motion for leave to proceed in forma pauperis (Doc. 2) is granted. It is further

ORDERED that Kling's institution will collect the additional monthly payments in the manner set forth in 28 U.S.C. § 1915(b)(2), quoted above, and will forward those installments to the court until the $350 filing fee is paid in full. It is further

ORDERED that the clerk of the court is directed to send a copy of this order to the appropriate official at plaintiff's institution. It is further

ORDERED that Kling's complaint is dismissed without prejudice. It is further

ORDERED that this action constitutes a strike against Kling for the purposes of the three-strike rule under 28 U.S.C. § 1915(g).

DATED this 19th day of June, 2018.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

9